IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UPDATE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-462-TSE-IFA |
| ) | |
| LAWRENCE SAMILOW, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S SUR-REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant, Lawrence Samilow ("Defendant"), by and through his undersigned counsel and pursuant.

## I. INTRODUCTION

Update, Inc. ("Update" or "Plaintiff") sues Defendant based two paragraphs of a Non-Disclosure and Assignment Agreement. (Dkt. 1-1 at 4–12.) The two paragraphs are Paragraph 12 a., Non-Solicitation, and Paragraph 13, Covenant Not to Compete. Plaintiff seeks a Preliminary Injunction that does not track the language of the restrictive covenants at issue. Instead, in the prayer for injunctive relief, Plaintiff tries to correct the language in the covenants that make the covenants ambiguous, overbroad, and thus unenforceable. It covertly does this by essentially proposing "blue penciling" problematic language in the restrictions to reform it. In one request for injunctive relief, the Plaintiff seeks to add a wholly new restriction on "advertising," an activity that was in neither covenant.

Plaintiff's Motion for A Preliminary Injunction should be denied for the reasons below, which are summarized here and fully discussed in the following sections of this memorandum.

Plaintiff has not met its burden for the Preliminary Injunction requested that would alter the status quo. Plaintiff fails to show that it will suffer irreparable harm from the actions of Defendant, one former employee in New Jersey, if the injunctive relief is not granted. In contrast, there will be significant harm to the Defendant former employee, who needs to earn a living after his job with Plaintiff ended in January 2018. On these arguments, Defendant relies on its previously filed Response In Opposition to Motion for Preliminary Injunction.

Plaintiff has not and cannot meet its burden of showing that there is a likelihood of it succeeding on the merits or that public policy favors the injunctive relief requested. As discussed in detail below, the two covenants Plaintiff seeks to enforce are unenforceable for the following reasons:

1. Paragraph 12 a. has patent ambiguity due to the placement of a modifying clause that makes any restriction susceptible to two or more meanings, one of which is overbroad, making the restriction unenforceable;

2. Paragraph 13 has patent ambiguity due to the placement of a modifying clause that makes any restriction susceptible to two or more meanings, one of which is overbroad, making the restriction unenforceable;

3. Paragraph 12 a. has multiple key terms that are undefined, including the word "solicit"; the lack of definitions causes ambiguity that makes any restriction susceptible to two or more

meanings, one of which is overbroad, making the restriction functionally and geographically overbroad and unenforceable;

4.  Paragraph 13 has multiple key terms that are undefined; the lack of definitions causes ambiguity that makes any restriction susceptible to two or more meanings, one of which is overbroad, making the restriction functionally and geographically overbroad and unenforceable;

5.  Blue pencil provisions in the agreement containing the restrictions do not save the restrictions but instead create ambiguity and uncertainty for the reading employee and thus violate public policy and make the covenants unenforceable.

Finally, Defendant asserts that public policy favoring delivery of legal services to clients by lawyers by means of their professional judgment consistent with ethical and legal responsibilities weighs against granting any of the injunctive relief requested here.

## II. FACTS

1. Plaintiff and Defendant executed the agreement attached as Exhibit A to the Verified Complaint on July 12, 2017. (Dkt. 1-1 at 4-12).

2. Plaintiff's employment of Defendant terminated January 10, 2018. (Dkt. 1).

3. All conduct Plaintiff complains of is after January 10, 2018. (Dkt. 1).

4. Plaintiff maintains a headquarters in New York City, and has other offices in Boston, San Francisco, Los Angeles, Miami, and Philadelphia. Sometime in 2018 after Defendant's employment with Update, Inc. had ended, a corporate entity called Driven, Inc. based in Falls

Church, Virginia, acquired Update, Inc. Following that transaction, Plaintiff expanded its e-discovery and litigation-support services physical footprint with new previously non-existent offices in the District of Columbia, Chicago, and Houston markets, and such services were reinforced in the markets where Plaintiff had already existed. (Dkt. 1).

5. The Job Description referred to in Paragraph 13 specified that Defendant's activities were "to include consultation of legal departments and legal spend." Defendant's duties under the Job Description, in part, were to "Present to and consult with C-level clients on business trends with a view towards developing new services, products, and distribution channels." A job requirement in that Job Description was to "[b]e a team player . . . ." (Dkt. 1-1. at 13).

6. Exhibit A to the Verified Complaint has the following provisions relevant here. Paragraphs 12 a. and 13 that are quoted in full the Verified Complaint.

Paragraph 13. a., a "blue pencil" provision that provides:

> The provisions of Paragraph 13 shall be severable, and if any of them is held invalid because of its duration, scope of area or activity, or any other reason, the parties agree that such provision shall be adjusted or modified by the court to the extent necessary to cure that invalidity, and the modified provision shall be enforceable as if originally made in this agreement.

Paragraph 20, a "blue pencil" provision that provides:

> Severability. If any provision of this agreement is held by a court of law to be illegal, invalid, or unenforceable, (i) that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and (ii) the legality, validity, and enforceability of the remaining provisions of this agreement shall not be affected and impaired thereby.

(*See* Dkt. 1-1 at 8, 9.)

4

5216618v.1

7. Plaintiff added offices or branch offices for its services in the District of Columbia, Chicago, and Houston following a transaction with Driven, Inc., in 2018 after Defendant's employment with Plaintiff ended. (Dkt. 1; Samilow Declaration May 15, 2018, Paragraph 5 (filed herewith as Exhibit A)).

8. Paragraph 13 includes the following sentence: "This covenant not to compete is limited to the types of activities and services included within my Job Description described in my offer letter." (Dkt. 1-1 at 8)

9. There is no "Job Description" described or mentioned in the "offer letter." (Dkt. 1-1 at 2-3).

10. The "Job Description" attached to the Verified Complaint describes nearly unlimited activities and services in the law firm and law department market, stating that Defendant's activities were "to include consultation of legal departments and legal spend." (Dkt. 1-1 at 13).

11. Paragraphs 12 a. and 13 each use the word "office" in setting multiple 50-mile restriction radiuses on activities of Defendant. The number of offices of Plaintiff have increased after the transaction with Driven, Inc. in 2018 after Defendant ended employment. (Dkt. 1-1 at 7-8).

12. The Defendant, for some period through January 10, 2018, worked in the Plaintiff's New York City office. (Dkt. 1).

13. Defendant has not "solicited" or "encouraged others to solicit" any person or entity with whom he had "any contact during the term of" his "employment for the purpose of diverting or taking away business from Company [Update, Inc.]." Samilow Declaration May 15, 2018, Paragraph 4 (filed herewith as Exhibit A).

### III. ARGUMENT

**A. Plaintiff Has Not Met Its Burden of Showing a Likelihood of Success on the Merits Because the Covenants It Seeks to Enforce Are Unenforceable**

Plaintiff has not met its burden of establishing that it is likely to succeed on the merits. Plaintiff will fail on the merits because the covenants it seeks to enforce are ambiguous, overbroad and unenforceable. The legal standards for enforceable covenants not to compete and not to solicit customers and prospective customers are well established in Virginia. The same rules of law apply to each type of covenant. The employer bears the burden to show that the restraint as written is reasonable and no greater that necessary to protect the employer's legitimate business interests. *Motion Control Sys., Inc. v. East*, 262 Va. 33, 37 (2001). A three-prong test generally is used. The employer is required to show that the restrictive covenant "(i) is narrowly drawn to protect the employer's legitimate business interest; (ii) is not unduly burdensome on the employee's ability to earn a living; and (iii) is not against sound public policy." *See Lanmark Technology, Inc. v. Canales*, 454 F. Supp. 2d 524, 531 (E.D. Va. 2006).

As discussed below, the two covenants relied on by Plaintiff here are unenforceable because each fails to satisfy the first and third prongs of the test.

**B. Paragraphs 12 a. and 13 Are Unenforceable Because Each Contains a Patent Ambiguity Due to Modifier Placement Making Each Susceptible to an Interpretation that is Overbroad**

Each of the covenants Plaintiff relies upon is made ambiguous and unenforceable by the same type of ambiguity identified in *Power Distribution, Inc. v. Emergency Power Engineering, Inc.*, 569 F. Supp. 54, 58 & n. 7 (E.D. Va. 1983), and likely countless other cases, as well as English grammar and composition books across the country if not the world – **namely,**

**ambiguity created by placement of "a modifier."** As the court in *Power Distribution* held based in large part upon placement of a "'modifier" creating ambiguity, the mere act of subjecting the employee to such uncertainty created by ambiguity offends public policy. *Id.* at 58.

### 1.  Paragraph 12 a.'s Modifier Placement Ambiguity Makes Its Purported Restriction Uncertain and Unenforceable

Paragraph 12 a.'s purported restriction on Defendant has two clauses that are bases for restriction separated by an "OR." The second clause ends with the words, **"or with whom I had any contact during the term of my employment for the purpose of diverting or taking away business from Company."** (*See* Dkt. 1-1 at 7 (emphasis added)). "Contact" is the verb immediately before the modifier "during the term of my employment for the purpose of diverting or taking away business from Company." Plaintiff no doubt advocates for an interpretation of the referenced modifier, "for the purpose of diverting or taking away business from Company," that skips over the closet verb "contact" and relates far back to the word "solicit." However, the modifier immediately follows the words, "contact during the term of employment." Defendant argues, as did the employee in *Power Systems*, that the modifier should be taken to apply to the closest words that can make sense: the verb "contact," which is the closest verb, and to not the verb "solicit" that is far removed in the sentence. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 147 (2012) (describing the "nearest-reasonable-referent canon) ("When the syntax involves something other than a parallel series of nouns and verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent.").

7

5216618v.1

Here, the correct interpretation of the restriction of Paragraph 12 to remove the ambiguity is immaterial because at least two potential interpretations make it impossible for Defendant at this time (and even when signed) to know exactly what the restriction is. Is the restriction now, given that his employment with Plaintiff has ended, applicable to (1) all customers and customer prospects located within 50-mile rings of any office, branch office, and production facilities of Plaintiff; or (2) all customers or customer prospects he ever had any contact with during his "employment for the purpose of diverting or taking away business from Company"?

The first interpretation above is overbroad because it would restrict Defendant from soliciting the customers or prospects for anything, even wholly non-competitive services, for example, library services and/or janitorial services that Plaintiff had never provided before. Thus, it is functionally overbroad. Such an ambiguous and thus overbroad restriction is unenforceable. *Lanmark Tech., Inc.*, 454 F. Supp. 2d at 530-31; *Lawrence*, 53 Va. Cir. 102 (2000).

The ambiguity in the Plaintiff's chosen language should not be "hung" on the Defendant, and he should not have to guess or go to court or be sued to get it clarified. The covenant is in restraint of trade, and the public policy of Virginia is that such uncertainty in an employer's restrictive covenant makes it unenforceable. *See Power Distrib., Inc.*, 569 F. Supp. at 58 & nn. 7 & 8. *See also Lanmark,* 454 F. Supp. 2d at 531.

Because the restriction in Paragraph 12. a. is unenforceable, Plaintiff has failed to establish that it will likely prevail on claims based on Paragraph 12 a. Its Motion for a Preliminary Injunction should be denied.

   2.  **Paragraph 13's Modifier-Placement Ambiguity Makes Its Purported Restriction Uncertain and Unenforceable**

Paragraph 13 has at least two different non-competition provisions stating the "things" that are restricted. One generally applies to Defendant's doing the "same or similar" services for any entity in competition with the Plaintiff. Plaintiff's motion for injunctive relief focuses solely on that general restrictive language and ignores critical, more specific language in Paragraph 13 that creates ambiguity and is itself ambiguous because of the placement of a modifier.

The critical language creating ambiguity follows the other restrictive language and is: "**This covenant not to compete is limited to the types of activities and services included within my Job Description described in my offer letter**." (*See* Dkt. 1-1 at 8 (emphasis added)). The modifier placement, as in *Power Systems*, makes the restriction susceptible to multiple interpretations, at least one of which is overbroad. In adding ambiguity, the sentence does not necessarily "limit" the covenant; it could be interpreted to expand it. But again, the "correct" interpretation of the covenant is immaterial, as the ambiguity of the restriction should not be hung on the Defendant employee due to the public policy of Virginia. *See Power Distrib.*, 569 F. Supp. at 58 & n.8.

What are some possible interpretations of the language: "**This covenant not to compete is limited to the types of activities and services included within my Job Description described in my offer letter**?" (Dkt. 1-1 at 8 (emphasis added)).

First, and likely most logical based on placement, is that the words "described in my offer letter" refer to the immediately prior words "Job Description." (Dkt. 1-1 at 13). But the "offer letter" dated July 10, 2017, does not have any reference a "Job Description." None. (Dkt. 1-1 at 2-3

So the words "described in my offer letter," instead, may be meant to refer back to any "activities and services" described in the offer letter and be an attempt at narrowing the coverage from the expansive scope of the activities and services mentioned in the "Job Description." In other words, the restrictions would be to the things in the offer letter that also are in the Job Description. On this one, there is "no telling." And the offer letter itself arguably does not "describe" any "activities or services." It lists prices for commissions for certain types of things.

Maybe last, the words could simply be surplusage and that the intent of the parties was simply to include the "types of activities and services" mentioned in the Job Description. If so, the restriction would be all encompassing to include undefined terms "consultation of legal departments and legal spend" and the requirement to "[b]e a team player," boundless as those terms are. The "Job Description" includes Defendant's activities and services in such broad terms as to virtually eliminate all possible activity in which Defendant could engage with any potential employer. For example, the Job Description provides that Defendant was responsible for "creating interest, developing opportunities, managing client relationships . . . and driving revenue by closing business with decision makers at corporations and law firms." All of the other duties described in the Job Description are equally broad and drafted as to virtually prohibit Defendant from work in any capacity for any other employer in "consulting with legal departments" about "legal spend." (Dkt. 1-1 at 13).

But again, exact interpretation of the meaning of the language is immaterial. The uncertainty makes the restriction impossible for the Defendant employee to guide his conduct with discipline to avoid violating the purported restriction. That violates public policy and

makes the restriction unenforceable. *See Lanmark,* 545 F. Supp. at 531; *Power Distrib., Inc.,* 569 F. Supp. at 58.

For this reason, Plaintiff has not established that it is likely to prevail on the claim based on Paragraph 13. The Motion for injunctive relief based on Paragraph 13 should be denied. *See Summer Wealth Management, LLC v. Investment Placement Group,* 2016 WL 15387 at 2-3 (quoting *BB&T Insurance Services, Inc. v. Rutherford,* 80 Va. Cir. 174 (2010)); *Prudential Secs., Inc. v. Plunkett,* 8 F. Supp. 2d 514 (E.D. Va. 1998).

### C. Paragraphs 12 a. and 13 Are Unenforceable Because They Are Not Narrowly Tailored to Protect the Business Interests of Plaintiff

The covenants in Paragraphs 12 a. and 13 are littered with numerous undefined and thus ambiguous terms making the covenants each vague and functionally and geographically overbroad. Each fails to deal in any serious fashion with making clear the scope of the functional and/or geographic limits to make it clear to the Defendant what is permitted and what is restricted. Clarity is lacking and ambiguity is present on descriptive terms, time such as past, present, or future in reference to people or entities or parts of entities. Likewise, the covenants fail to deal with modern electronic communications and thus leave vague what if any restrictions apply to or are implicated by electronic telecommunication in multiple physical places. Bottom line: each of the covenants relied upon by the Plaintiff in this case are unenforceable because they suffer the same types of defects as the covenants at issue in *Lanmark* and the Virginia Circuit Court decision, *Lawrence,* that it followed. Defendant will address the undefined and ambiguous terms here.

5216618v.1

     **1.    Paragraph 12 a. has Multiple Undefined Terms that are ambiguous and make the covenant functionally and Geographically Overbroad and Unenforceable**

Paragraph 12 a. has at least the following undefined terms:

- solicit or encourage others to solicit;
- customers or customer prospects;
- office, branch office, or production facility; and
- located.

As previously discussed, the entire clause "with whom I had any contact during the term of my employment for the purpose of diverting or taking away business from Company" also makes the restriction ambiguous, overbroad, and unenforceable because one of the two or more possible interpretations is overbroad of the clause is overbroad.

a.    The term "solicit" is undefined and ambiguous. What constitutes to "solicit" or "solicitation" is ambiguous. *See Summer Wealth Management, LLC,* 2016 WL 150387 at 2-3 (E.D. Va 2016) *(quoting BB& T Insurance Services, Inc.,* 80 Va. Cir. 174 (2010)); *Prudential Secs., Inc.,* 8 F. Supp. 2d 514 (E.D. Va. 1998) (finding agreement's terms ambiguous where drafter failed to define "solicitation," and therefore refusing to enforce agreement). In a restrictive covenant, the term should be construed against the employer. *See Summer Wealth Management, LLC,* 2016 WL 150387 at 2-3 *(quoting BB& T Insurance Services, Inc.,* 80 Va. Cir. 174 (2010)).

    Based on this ambiguity alone, Plaintiff's Motion for a Preliminary Injunction based on any alleged violation of Paragraph 12 a. should be denied; "solicit" is its key term and that term

5216618v.1

is ambiguous. *See Summer Wealth Management, LLC,* 2016 WL 150387 at 2-3 *(quoting BB& T Insurance Services, Inc.,* 80 Va. Cir. 174 (2010)); *Prudential Secs., Inc. v. Plunkett,* 8 F. Supp. 2d 514 (E.D. Va. 1998).

b.  The terms "customer" and "customer prospects" are undefined and ambiguous. Is the "customer" the buying entity, the person, the division or subpart or the whole of the entity? Is it past, present or and future (based on agreement execution or termination of employment) customers after Defendant left employment? Does the term include entities, some or all or only parts thereof when the entity has multiple operations across the country? How could Defendant know who was a "customer" of the Company that he had not dealt with or been given knowledge of? How could he know new customers or new prospects? Can Plaintiff restrict the customer simply by moving in on it? What does it take to be a "prospect" as opposed to not a "prospect"? All unanswered and left ambiguous by the covenant creating uncertainty for Defendant that a former employee should not as a public policy be forced to face.

c.  "Office, branch office, or production facility" is undefined and ambiguous. What are the specifications for these? Do temporary offices, virtual offices, home offices, or work places count? Are law firm and legal work rooms and data centers "production facilities"? Do former or future locations of office, branch-office, and production facilities count, or do they disappear and spring up at the will of Plaintiff to create new 50-mile rings of restriction like rocks thrown in a pond making new rings in the water each time? No reasonable person of ordinary intelligence could answer all these questions merely by reading the agreement because key terms are undefined and ambiguous.


d.    "Located" is an undefined and ambiguous terms. What does that mean for entities with multiple operations? What does it mean for people or entities or parts thereof that move, relocate, or spring up anew or disappear from physical sites? Where is something "located" when the thing is virtual or digital or electronic and is everywhere and nowhere at once? For example, where does a multistate telephone call or a call to multiple parties take place? How does it apply to data management in "The Cloud."  Here, the Plaintiff concedes it added physical office locations after a transaction with an entity called Driven, Inc. Does each new office location, previously unknown to Defendant, sprout another 50-mile radius of restriction from which restricted customer "tentacles" stretch out across the country to block him from doing business anywhere world-wide where Plaintiff chooses to have anything that it labels or uses as an office, branch office, or production facility? And how can Defendant know where Plaintiff is planting offices, branch offices, and production facilities? He cannot. The ambiguity makes the agreement overbroad. *See Lawrence,* 53 Va. Cir. 102 (2000).

As written, Plaintiff could effectively foreclose any competition anywhere by simply opening an office, branch office, or production facility and claim a 50-mile radius of protection. Plaintiff has already done that by adding at least three new "offices" and presumptively three new 50- mile restricted radiuses. And Plaintiff concedes that it is actively "coordinating work space" for projects – that is arguably changing and/or adding the location of a "production facility" each time. That is unreasonable; such covenant language permitting that is unenforceable. As written, there effectively is no geographic restriction at all because the agreement is not tied to certain facilities, existing facilities, or facilities where the Defendant has worked – the geography is like an "amoeba." It can change to restrict the Defendant because Plaintiff can continue to locate and relocate over and over again to, under one interpretation of

the geography language, block Defendant from doing anything anywhere by creating an endless set of rings of 50-mile restrictions with "offices" and "production facilities," whatever they are. The covenant thus is geographically overbroad and unenforceable. *See Lawrence,* 53 Va. Cir. 102 (2000). It is of no consequence for Plaintiff to claim that it only seeks to enforce its agreement in New Jersey or Philadelphia when the language, as written, can be interpreted to allow Plaintiff to block Defendant anywhere. *Cf. Lanmark,* 545 F. Supp. at 531; *Lawrence,* 53 Va. Cir. 102 (2000).

Bottom line: The lack of definitions in key terms makes the covenant unreasonable and susceptible to multiple interpretation far in excess of reasonable to protect any legitimate business interest of Plaintiff. For this reason, the covenant in Paragraph 12 a. is unenforceable and Plaintiff has not established that it is likely to prevail on that claim for meeting its burden for a Preliminary Injunction. *See Summer Wealth Management, LLC,* 2016 WL 150387 at 2-3 (quoting *BB& T Insurance Services, Inc.,* 80 Va. Cir. 174 (2010)); *Prudential Secs., Inc.,* 8 F. Supp. 2d 514 (E.D. Va. 1998).

### 2. Paragraph 13 Has Multiple Undefined Terms That Are Ambiguous and Make the Covenant Functionally and Geographically Overbroad and Unenforceable

Paragraph 13 includes at least the following as undefined terms:

- compete
- providing
- similar services
- similar
- services

- provides
- legal consulting
- information governance
- services within
- office, branch office, production facility
- types of activities and services

All of the terms are ambiguous and create such uncertainty that Defendant could not possibly know what was and what was not restricted. With respect to "office, branch office, or production facility," and "within," the ambiguities here are the same as those discussed above under Paragraph 12 a. Moreover, Paragraph 13 incorporates a reference to the Job Description. It too has undefined and ambiguous terms such as "consultation of legal departments and legal spend" and "Be a team player." And courts have regularly found that undefined terms like "services" and "similar services," found in Paragraph 13 are "capable of more than one reasonable construction, and thus, are ambiguous." *See Lanmark*, 454 F. Supp. 2d at 530–31 (citing *Lawrence*, 53 Va. Cir. at 104).

The bottom line, again, is that the undefined terms make the restrictive scope ambiguous. There are multiple interpretations possible that are functionally and geographically overbroad. In fact, some are not only overbroad—they are unbounded (for example, "legal spend"). The lack of definitions in key terms makes the covenant unreasonable and susceptible to interpretation far in excess of reasonable to protect any legitimate business interest of Plaintiff.

For this reason, the covenant in Paragraph 13 should be found to be unenforceable, and Plaintiff has not established that it is likely to prevail on claims for its alleged violation. For this

reason, the Motion for a Preliminary Injunction should be denied. *See Summer Wealth Management, LLC,* 2016 WL 150387 at 2-3 *(quoting BB& T Insurance Services, Inc.,* 80 Va. Cir. 174 (2010)); *Prudential Secs., Inc.,* 8 F. Supp. 2d 514 (E.D. Va. 1998).

### D. Paragraphs 12 a. and 13 Are Unenforceable Because Two Blue-Pencil Provisions in the Agreement Create Uncertainty and Ambiguity

As a matter of Virginia law, inclusion of two blue-pencil provisions in the agreement, both invalid under Virginia law (and one provision physically placed as Paragraph 13 a. as an integral part of an already vague and ambiguous noncompeting provision), make both covenants, by their plain language subject to potential interpretation and **mandatory change** by a court as necessary to save the two covenants' restrictions. The presence of the blue-pencil provisions makes it impossible for the employee (or any other reader) to know exactly the covenants' restrictive scopes and effects, or lack thereof. Forcing this type of "interpretation uncertainty" upon an employee by including it in an agreement with non-solicitation and non-compete covenants violates public policy, and thus the covenants are each unenforceable. *See BB& T Insurance Services, Inc. v. Rutherford,* 80 Va. Cir. 174 (2010); *Pace v. Retirement Plan Administrative Service, Inc.,* 74 Va. 201 (2007), *affirmed on reconsideration,* 2007 WL 7560645 *and* 2007 WL 7560646 (Richmond, 2007).

Moreover, it would be inappropriate to sever the blue-pencil provisions. They are "integral" to the deal that the employee sees and must base his actions and inactions on to "choose employment and earn a living," at risk of legal action by the former employer. The blue-pencil provisions, themselves, make the agreement ambiguous. Putting that type of uncertainty upon an employee "offends sound public policy." *See Lanmark,* 545 F. Supp. at 531; *Power*

17

*Distrib., Inc.*, 569 F. Supp. at 58.[1] For this reason, the claims of the Verified Complaint lack merit and Plaintiff has failed to establish that it is likely to prevail. The Motion for a Preliminary Injunction should be denied.

### E. Public Policy Weighs In Favor of Not Granting The Injunctive Relief Requested Because It Would Interfere With the Provision of Legal Services

Defendant submits that public policy will not be supported by granting the injunctive relief requested here. In fact, public policy weighs against granting the injunction here because it would disrupt the provision of legal staffing services in for certain legal departments, law firms, and their clients in New Jersey. Defendant acts as a facilitator to legal departments and law firms in staffing legal matters in New Jersey. The legal departments, law firms, and their clients should be able to choose freely to have their staffing needs met from sources they choose in their judgment, motivated by professional, ethical, and legal obligations. What Plaintiff wants is for the Defendant, to be forced to tell people and entities, seeking legal support service consultation that "I cannot serve you and you cannot use my lawyers." Such a restriction, like many others, is a restraint not just on trade, but on provision of legal staffing services that are important to legal departments, law firms, law firm clients, agencies and courts. Public policy here favors no injunctive relief. If Plaintiff can win on the merits there could be a remedy that does not so severely intrude upon the provision of legal services. Thus, the motion for injunctive relief should be denied.

---

[1] Further uncertainty is generated by the blue pencil provisions, in that courts in other states might not have the same "no blue pencil" rule as Virginia and might refuse to apply the Virginia choice law provision in the agreement if those courts were asked to interpret the agreement. In that case, such a court might blue-pencil the agreement to save the covenants. Defendant should not be forced to have to guess whether or not the blue pencil provisions would be deemed valid as the agreement itself assumes.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction should be denied.

Respectfully submitted this 15th day of May, 2018,

/s/ David P. Phippen
David P. Phippen (VSB No. 22854)
Robert P. Floyd, III (VSB No. 42264)
Constangy, Brooks, Smith & Prophete LLP
12500 Fair Lakes Circle, Suite 300
Fairfax, VA 22033
Phone: 571.522.6100
Fax: 571.522.6101
Email: dphippen@constangy.com
Email: rfloyd@constangy.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2018, a true and correct copy of the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** was filed on ECF, which will send notice of the filing to Plaintiff's counsel:

/s/ David P. Phippen
Robert P. Floyd, III (VSB No. 42264)
Constangy, Brooks, Smith & Prophete LLP
12500 Fair Lakes Circle, Suite 300
Fairfax, VA 22033
Phone: 571.522.6100
Fax: 571.522.6101
Email: rfloyd@constangy.com

**ATTORNEYS FOR DEFENDANT**