IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| UPDATE, INC.,<br><br>   *Plaintiff*,<br><br>v.<br><br>LAWRENCE SAMILOW<br><br>   *Defendant*. | No. 1:18-cv-00462-TSE-JFA |

**PLAINTIFF'S RESPONSE TO SUR-REPLY IN FURTHER SUPPORT OF ITS
MOTION FOR PRELIMINARY INJUNCTION**

In his original Opposition, Defendant Samilow relied primarily on an argument that Update had withdrawn from the New Jersey market where he continues to unlawfully compete and solicit Update clients. (Dkt. 9). With those arguments now refuted, (*see* Suppl. Pish Decl. 8-10, 12-13, 15, Dkt. 10-2; Suppl. Williams Decl. ¶¶ 3-9, Dkt. 10-1), he now attempts in vain in a sur-reply to mount a facial attack on the restrictive covenants themselves, arguing that they are ambiguous and overbroad. These arguments are meritless.

First, Defendant relies primarily on out-of-date case law and fails to take account of the 2013 Supreme Court of Virginia decision that forecloses facial attacks on restrictive covenants. Second, the covenants are not ambiguous, and they certainly are not overbroad given the circumstances of Mr. Samilow's extensive contact with Update customers and Update's placement and eDiscovery services during his 22-year career with the company. The Court should thus adopt the plain meaning of the non-solicitation and non-competition covenants. Lastly, Mr. Samilow's contention that the entire agreement is unenforceable because it contains a

"blue pencil" provision is unsupported under Virginia law and ultimately a meritless last-ditch effort to derail a perfectly enforceable agreement. The Court should grant Update's Motion for a Preliminary Injunction and enjoin Mr. Samilow from soliciting Update's clients with whom he had prior contact and competing with Update for the one-year restricted period.

## ARGUMENT

**I.      Facial Challenges to Non-Compete Agreements are Inappropriate Under Virginia Law.**

At oral argument and in his sur-reply, Mr. Samilow challenges the restrictive covenants at issue here as facially overbroad. But Virginia law does not countenance such facial attacks. *See Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 142–44 (2013) (holding that the trial court erred in invalidating a non-compete on facial review of the agreement). In *Assurance Data*, the Supreme Court of Virginia held that "restraints on competition are neither enforceable nor unenforceable in a factual vacuum." *Id.* at 144. Instead, courts must evaluate the circumstances of each restrictive covenant case. The Western District of Virginia has since correctly observed that "*Assurance Data* forecloses facial attacks on restrictive covenants." *O'Sullivan Films v. Neaves*, 2017 WL 4798997, at *8 (W.D. Va. Oct. 24, 2017).[1]

Mr. Samilow's objections to the restrictive covenants here constitute a facial challenge. *(See* Def.'s Memorandum in Support of Motion to Dismiss, Dkt. 19, at 5). He admits as much in an argument section heading, asserting that the Complaint should be dismissed because "the Noncompete Agreement is Unenforceable on Its Face." (*Id.*) More importantly, the hypothetical ambiguities and alleged overbreadth Mr. Samilow claims here have nothing to do with the

---

[1] Even the pre-*Assurance Data* cases on which Mr. Samilow relies supports this proposition. *See Power Distribution, Inc. v. Emergency Power Engineering, Inc.*, 569 F. Supp. 54, 56 (E.D. Va. 1983) (observing that the court had previously denied defendant's motion to dismiss because Virginia law did not allow the court to "conclude that the covenant would be unreasonable under any conceivable circumstances").

circumstances of *his* breaches of the covenants in New Jersey. In light of all the facts and circumstances, the restrictive covenants here are eminently reasonable.

## II. The Restrictive Covenants Here Are Not Ambiguous.

Samilow spends considerable effort in his sur-reply arguing alleged hypothetical ambiguities in both § 12(a) (non-solicitation) and § 13 (non-compete) of his Agreement. This attempt to confuse masks the plain meaning of these two provisions, which is apparent to any reasonable reader. He focuses on the placement of modifying clauses in both provisions and individual undefined terms as the source of the alleged ambiguities. These efforts are futile, as the covenants, when read as a whole are quite plain and unambiguous.

In interpreting contracts, courts should read the parties' chosen language based on its "usual, ordinary, and popular meaning." *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135 (1995). "[C]ourts must not strain to find ambiguities." *Builders Mut. Ins. Co. v. Parallel Design & Development LLC*, 785 F. Supp. 2d 535, 543 (E.D. Va. 2011). Indeed, "[C]ontractual provisions are not ambiguous merely because the parties disagree about their meaning." *Nextel WIP Lease Corp. v. Saunders*, 276 Va. 509, 516, (2008) (citing *Dominion Sav. Bank, FSB v. Costello*, 257 Va. 413, 416 (1999)).

### 1. Non-Solicitation Provision[2]

As to the non-solicitation provision in § 12(a) of the Agreement, Samilow argues that the trailing modifier "for the purpose of diverting or taking away business from Company" is

---

[2] For the Court's ease of reference the entirety of paragraph 12(a) reads as follows:

Non-solicitation of Customers or Prospects. I acknowledge that information about the Company's customers and customer prospects is confidential competitive information and constitutes a valuable trade secret. Accordingly, I agree that during the term of this agreement and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, solicit or encourage others to solicit any of the Company's customers or customer prospects located within fifty (50) miles of any office, branch office, or production facility of the Company or with whom I had any contact during the term of my employment for the purpose of diverting or taking away business from Company.

3

ambiguous as to whether it modifies the previous term "contact" or "solicit." Defendant contends that the phrase modifies "contact," and thus only serves to limit the phrase "with whom I had any contact during the term of my employment." That reading makes no sense. First, "contact" does not function as a verb here. It is thus not the "nearest-reasonable referent," as Samilow suggests. (Dkt. 21 at 7). Common sense also dictates that the agreement would not contemplate an employee having contact with customers during employment for the purpose of diverting or taking away business from the Company.

In the context of the entire provision, only one reasonable interpretation exists: Samilow is prohibited from soliciting Update customers or prospects either (1) located within 50-miles of an Update office or (2) with whom he had contact with during the term of his employment. The modifying phrase "for the purpose of diverting or taking away business from Company" applies to both subsets of customers, and serves to clarify and limit "solicit." This limitation obviates any alleged functional overbreadth, and would not prohibit Samilow from soliciting Update's customers for non-competitive services, such as Defendant's examples of library or janitorial services.

### 2. Non-Compete Provision[3]

Samilow also takes issue with the phrase limiting the covenant not to compete "to the types of activities and services included within [his] Job Description described in [his] offer

---

[3] Again, for the Court's ease of reference the operative portion of paragraph 13 is reproduced here:

I agree that during the term of my employment with Company, and for one (1) year after my employment ends for any reason, I will not directly or indirectly compete with Company by providing to another person or entity in competition with Company (defined below) the same or similar services as those that I provided to the Company during the term of my employment with Company. For purposes of this agreement, a person or entity is in competition with the Company if it provides legal staffing, managed review, legal consulting, information governance, electronic data discovery and litigation support services within fifty (50) miles of any office, branch office, or production facility of the Company, with the exception of any person or entity listed below as a "Prior Relationship". This covenant not to compete is limited to the types of activities and services included within my Job Description described in my offer letter.

letter." He contends the phrase is ambiguous because the offer letter contains no job description. (Dkt. No. 21 at 10). This a red herring attempt to create an ambiguity where none exists. The reference is clearly to the job description that was attached to the July 10, 2017 offer letter along with the Agreement itself.  Samilow signed or initialed all three documents on the same day (July 12, 2017). (Dkt. No. 1-1 at 3, 10, 13).

Nor do the services described in the job description of Samilow's agreement render the non-compete impermissibly broad. Defendant's argument ignores the provision of § 13 limiting competitive services to "legal staffing, managed review, legal consulting, information governance, electronic data discovery, and litigation support services." (Dkt. No. 1-1, at 8).  It also ignores the language in the job description that his position, "Chief Customer Officer will be able to sell across Update Legal's entire service portfolio…" (Dkt. No. 1-1 at 13). Thus the other terms in his job description do not broaden the scope of the prohibited competition beyond the narrow context of the services that Samilow sold and provided to Update clients. It certainly does not prohibit Samilow from working in "any capacity for any other employer in 'consulting with legal departments' about 'legal spend,'" (Surreply at 10), so long as he is not providing the proscribed competing services listed above.

### 3. Certain Terms in Both Provisions

Samilow's contention that undefined terms in both provisions render the covenants ambiguous is similarly unavailing. If Update had included every definition that Samilow suggests must be included, it may as well incorporate the entire dictionary by reference. Simply put, a definition in the covenants is not required for this clear agreement.

The term "solicit" in § 12(a) of the agreement, for example, is not ambiguous. Courts have enforced non-solicitation covenants with this term.  *See e.g., Brainware, Inc. v. Mahan*, 808 F. Supp. 2d 820, 827-28; *JTH Tax, Inc. v. Lee*, 514 F. Supp. 2d 818, 823 (E.D. Va. 2007); *cf.*

5

*Mona Elec. Group, Inc. v. Truland Serv. Corp.*, 56 Fed.Appx. 108, 110 (4th Cir. 2003) ("The plain meaning of the word 'solicit' requires the initiation of contact.").

Samilow's reliance on this Court's decision in *Summer Wealth Management, LLC v. Investment Placement Group*, 2016 WL 153087 is misplaced.[4] There the court did not hold that the term "solicit" was so ambiguous as to render the covenant unenforceable. It merely applied correct meaning, and required plaintiff to show that the defendant had taken "an affirmative act" to solicit the employees. *Id.* at *2–3. Unlike the plaintiff in *Summer Wealth Management*, Update has produced ample evidence of affirmative acts Mr. Samilow has taken to solicit and divert customer work from Update.

Contrary to Samilow's assertion in his supplemental declaration that he has only had "mere contact" with clients, (Dkt. No. 21-1 at ¶ 2), he has been soliciting since the day he resigned following his rejected "proposal" to divert the Update clients he serviced. (Pish Decl. ¶¶ 25-26, 31, Dkt. 4-1; Williams Decl. ¶¶ 5-7, Dkt. 4-3; Suppl. Williams Decl. ¶¶ 14-15, Dkt. 10-1). Again, he does not deny his role in diverting each of these projects, but now attempts to contort what solicit plainly means. By "obtaining placements," as he calls his competing activity, (see Dkt. No. 9-1 at ¶ 23), one inherently has to solicit in order to obtain and make the placement. Black's defines "solicit" as:

> "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain; and though the word implies a serious request, it requires no particular degree of importunity, entreaty, imploration, or supplication."

---

[4] The other cases Samilow cites on this issue are even less persuasive. In *Prudential Securities, Inc. v. Plunkett*, 8 F. Supp. 2d 514, 518 (E.D. Va. 1998), the court applied New York Law. The case *BB&T Insurance Services, Inc. v. Thomas Rutherford, Inc.*, 80 Va, Cir. 174 (2010) is a Virginia Circuit Court opinion that is not binding on this Court, and, in any event, any ambiguity of "solicit" there was secondary in the court's analysis to the sweeping functional overbreadth of the provision. *Id.* at *5.

6

Black's Law Dictionary (6th ed. 1990); *see also* Black's Law Dictionary (10th ed. 2014, which does not contain the term "solicit," but does define "solicitation," in pertinent part, as "1. The act or an instance of requesting or seeking to obtain something; a request or petition. … 4. An attempt or effort to gain business."). Samilow even admits in his Sur-Reply that he "acts as a facilitator … in staffing legal matters in New Jersey." (Dkt. 21 at 18). One can hardly facilitate staffing without seeking to facilitate the staffing in the first instance.

Samilow also no doubt is "soliciting" by being a "presenting sponsor" at the upcoming New Jersey General Counsel of the Year Award event to be held on Friday, May 18, 2018. (See Dkt. No. 10-4). Samilow and his competing company are not a mere spectator at this premier event in the corporate legal community. He will be front and center at the event taking the place of Update as the sole presenting sponsor without any authorization from Update. Companies, including customers of Update, will hear about and see what Samilow offers and go to his website to see the indisputable competing services that Samilow Harvest Group provides. That is "seeking" the business of others—not merely attending a civic or community event as suggested in his supplemental declaration.

Samilow further contends that the geographic scope of both provisions is ambiguous because he claims that Update has added offices since he signed the agreement. (Dkt. No. 21 at 14). This too ignores the plain interpretation of the language, which refers to the offices in existence at the time of execution. *See Blue Ridge Anesthesia and Critical Care, Inc. v. Gidick*, 239 Va. 369, 373 (rejecting similar argument and holding that "the restriction in this case applies only in the "territories serviced by" the former employees, not Blue Ridge's entire market area at the time the employees left Blue Ridge's employ, or later"); *see also Advanced Marine*

*Enterprises, Inc. v. PRC Inc.*, 256 Va. 106, 119 (enforcing similar geographic limitation language imposing 50-mile radius around roughly 300 offices). Samilow relies on a Virginia Circuit Court decision, *Lawrence v. Bus. Commc'ns. of Virginia*, 53 Va. Cir. 102. But in that case, the agreement expressly included "a radius of fifty (50) miles from any location BCV operates **during the duration of the Agreement.**" *Id.* at *3 (emphasis added). The court thus interpreted the provision as applying to any store opened when the employee was initially employed, as well as any store that the company opened afterward, including the post-employment duration of the agreement. *Id.*

      Samilow's Agreement here contains no language stating that the 50-mile radius applies to any office Update opens for the "duration of the Agreement." The only plain interpretation then is that it applies only to those offices existing when the parties entered into the agreement. Regardless, Samilow continues to indisputably breach his non-compete agreement in New Jersey, within 50 miles of Update's New York City headquarters. (*See* Dkt. No. 9-1 at ¶ 9) (Samilow conceding that his "practice focuses solely on the New Jersey market"). This existing New Jersey territory is not implicated by any office that Update could subsequently open, and there is no question about Mr. Samilow being lawfully restricted from competing there.

**III.        The Blue Pencil Provision Is Not Fatal to Samilow's Entire Contract.**

      Samilow also argues that the presence of a two "blue pencil provisions" renders the entire agreement unenforceable under Virginia law. This argument fails. First, Samilow incorrectly assumes that his agreement is ambiguous, which as demonstrated above and previously, it is not. Second, Samilow relies on an incorrect premise of Virginia law that the Court should not adopt here.

      To be sure, the Supreme Court of Virginia has not adopted a per se rule that a restrictive covenant is invalid if it contains a provision purporting to allow a court to "blue pencil" the

8

agreement. In fact, the Supreme Court of Virginia has never even addressed the issue, nor has this Court or any other federal court applying Virginia law. Plaintiff instead relies solely on two Virginia Circuit Court opinions, which are not binding on any court. *See BB&T Insurance Services, Inc. v. Rutherford*, 80 Va. Cir. 174 (2010); *Pace v. Retirement Plan Admin. Serv., Inc.*, 74 Va. Cir. 201 (2007). These decisions do not deeply address the issue, but instead only mention it as dicta after already deciding that the covenants at-issue were overbroad and unenforceable regardless of the blue-pencil provision. *See Pace*, 74 Va. Cir. 201, at *2; *BB&T*, 80 Va. Cir. 174, at *5. For all these reasons, the Court should reject this new blue pencil argument.

   Moreover, Samilow's argument fails to appreciate the difference between a contractual provision expressing the parties intent for a court to "sever" a provision held unenforceable and a blue-pencil provision. Virginia courts routinely sever unenforceable provisions from otherwise valid contracts. *See e.g., Roto-Die Co., Inc. v. Lesser*, 899 F. Supp. 1515, 1522 (W.D. Va. 1995) (severing unenforceable provisions from remaining enforceable covenants while refusing to "blue pencil").

**IV.**  **An Injunction Would Not Interfere With the Provision of Legal Services.**

   Samilow lastly contends that his work is so important to law firms and corporate legal departments, that enforcing the non-compete he agreed to would violate public policy. Tellingly, he cites no evidence or authority in support of this contention. The marketplace for temporary/interim legal staffing, eDiscovery, and the like is not so bereft of competition that enjoining Samilow would unduly restrict the supply of such services. Second, he asserts that "[w]hat Plaintiff wants is for the Defendant, to be forced to tell people and entities, seeking legal support service consultation that 'I cannot serve you and you cannot use my lawyers." (Dkt. No. 21 at 18). That is a gross mischaracterization. Legal staffing candidates are not Mr. Samilow's

9

lawyers—they do not belong to him. The restrictive covenants here apply to Mr. Samilow, a non-lawyer, and appropriately prohibit him from providing competing placement services for the restricted period.

## CONCLUSION

Based on the foregoing and those reasons previously set forth, Plaintiff Update, Inc. respectfully requests that the Court grant its motion and enter an Order that preliminarily enjoins Defendant Samilow, directly or indirectly, individually or through Samilow Harvest Group or other parties, from: (a) providing any future competing services (including temporary legal staffing placements, to include interviewing or recruiting or work space for such placements, eDiscovery, or information governance services) to Lowenstein, Porzio, Teligent or other customers or entities for the restricted 1-year period[5] and in the 50-mile restricted radiuses under his Agreement; (b) further advertising, soliciting or encouraging others to solicit, for the restricted 1-year period, Lowenstein, Porzio, Teligent and all other Update customer or prospect with whom Defendant Samilow had contact for the purpose of diverting or taking away the above-noted competing business from Update (to include Samilow's sponsorship of the upcoming New Jersey General Counsel of the Year award); and (c) accessing or using or disclosing any Update confidential information, including but not limited client lists, lists of contacts of potential legal staffing candidates, and pricing or rate information.

---

[5] As requested in Update's original memorandum in support, because of Samilow's ongoing violation of his non-solicitation and non-compete covenants, the Court should prospectively enforce the 1-year duration from the date of its Injunction Order to appropriately provide Update the protection that it bargained for in its Agreement with Samilow. (See Dkt. No. 4 at 12)(citing *Roanoke Engineering Sales Co., Inc. v. Rosenbaum*, 223 Va. 548, 555-56 (1982); *Hair Club for Men, LLC v. Ehson*, 2016 WL 6780310, at *4-*5 (E.D. Va. Nov. 14, 2016).

#57655466_v2

May 16, 2018                                            Respectfully submitted,


                                                              */s/ Brandon H. Elledge*
Brandon H. Elledge (VSB No. 45349)
Kevin D'Olivo (VSB No. 90655)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard
Tysons Corner, Virginia  22102
(703) 720-8015
Fax: (703) 720-8610
brandon.elledge@hklaw.com
kevin.dolivio@hklaw.com

*Counsel for Plaintiff Update, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on this 16th day of May, 2018 a true and correct copy of the foregoing was served via ECF notification on the following counsel of record:

Robert P. Floyd, III
David P. Phippen
Constangy, Brooks, Smith & Prophete LLP
12500 Fair Lakes Circle, Suite 300
Fairfax, VA 22033
Phone: 571.522.6100
Fax: 571.522.6101
Email: rfloyd@constangy.com

*Counsel for Defendant Lawrence Samilow*

> */s/ Brandon H. Elledge*
> Brandon H. Elledge (VSB No. 45349)
> HOLLAND & KNIGHT LLP
> 1650 Tysons Boulevard
> Tysons Corner, Virginia 22102
> (703) 720-8015
> Fax: (703) 720-8610
> brandon.elledge@hklaw.com
>
> *Counsel for Plaintiff Update, Inc.*

#57655466_v2