# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UPDATE, INC., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>LAWRENCE SAMILOW , )<br>      Defendant. ) | Civil Action No. 1:18cv462 |

## MEMORANDUM OPINION

In this action for breach of contract, plaintiff, Update, Inc., alleges that its former employee, defendant Lawrence Samilow, breached the non-compete and non-solicitation clauses in his employment agreement. Plaintiff seeks a preliminary injunction pursuant to the non-solicitation and non-compete clauses of its contract with defendant, enjoining defendant from continuing to solicit its customers and to enforce the terms of the non-compete clause.

## I.

Plaintiff, a Delaware corporation with its principal place of business in New York, provides eDiscovery and legal staffing services throughout the United States.

Defendant, a New Jersey citizen, began working at plaintiff in 1995, and eventually, in 2016, was promoted to Chief Customer Officer, the company's top sales executive position. In that role, defendant was responsible for developing new sales opportunities and managing client relationships. Defendant was directly responsible for customer service for a number of New York and New Jersey clients. Defendant was also responsible for supervision of national sales, and therefore had access to client information across the country.

Approximately a year after defendant was promoted to Chief Customer Officer, plaintiff offered defendant a new compensation plan. In connection with the plan, defendant entered into

1

an "Employee Nondisclosure and Assignment Agreement" (the Agreement) dated July 12, 2017.

The Agreement contains a non-solicitation clause, which provides:

> I acknowledge that information about [plaintiff's] customers and customer prospects is confidential competitive information and constitutes a valuable trade secret. Accordingly, I agree that during the term of this agreement and for a period of one (1) year after my employment ends, I will not, either directly or indirectly, separately or in association with others, solicit or encourage others to solicit any of [plaintiff's] customers or customer prospects located within fifty (50) miles of any office, branch office, or production facility of the [plaintiff] or with whom I had any contact during the term of my employment for the purpose of diverting or taking away business from [plaintiff].

Agreement at § 12(a).

In addition to the non-solicitation clause, the Agreement also contains a non-compete clause which states:

> I agree that during the term of my employment with Company, and for one (1) year after my employment ends for any reason, I will not directly or indirectly compete with Company by providing to another person or entity in competition with Company (defined below) the same or similar services as those that I provided to the Company during the term of my employment with Company. For purposes of this agreement, a person or entity is in competition with the Company if it provides legal staffing, managed review, legal consulting, information governance, electronic data discovery and litigation support services within fifty (50) miles of any office, branch office, or production facility of the Company, with the exception of any person or entity listed below as a "Prior Relationship".
>
> This covenant not to compete is limited to the types of activities and services included within my Job Description described in my offer letter.

Agreement at § 13.

On January 10, 2018, defendant resigned his employment at plaintiff.[1] At approximately the same time as his resignation, Driven, Inc. had acquired Update, Inc., and defendant proposed to Driven moving all legal staffing and eDiscovery clients defendant had been servicing to defendant's soon to be formed consulting practice. That proposal was rejected.

---

[1] Defendant's pleading states that defendant was terminated. Whether defendant resigned or was terminated is not material to the preliminary injunction analysis, as the validity of the Agreement's non-solicitation and non-compete clauses is not affected by whether he was discharged or resigned.

On January 11, 2018 defendant contacted a law firm, Lowenstein Sandler LLP, a client with which defendant had worked during his employment, to solicit business. In January, defendant also formed Samilow Harvest Group LLC, a new company headquartered in Roseland, New Jersey, within 50 miles of plaintiff's New York headquarters. Samilow Harvest Group's website states that it provides eDiscovery services similar to those provided by plaintiff.

Currently, defendant is providing services similar to those provided at plaintiff to two of plaintiff's clients: (i) Porzio, Bromberg & Newman, P.C. (Porzio), and (ii) Teligent, Inc. (Teligent). With respect to Porzio, defendant is providing legal staffing services similar to those provided by plaintiff in the past. And with respect to Teligent, defendant is alleged to have diverted a large project from plaintiff, and Teligent has informed plaintiff that it transferred its engagement to another vendor.[2]

On April 20, 2018 plaintiff filed its verified complaint alleging that defendant was in breach of his Agreement (i) by soliciting plaintiff's customers Porzio, Teligent, and Lowenstein Sandler, and (ii) by engaging in similar services he provided to plaintiff within a 50-mile radius of plaintiff's New York headquarters. Plaintiff moved for a preliminary injunction the same day. An initial hearing on the motion for a preliminary injunction was held on Friday, May 11, 2018. Defendant filed a response brief before that hearing, making a number of arguments in opposition to the motion for a preliminary injunction, but at the May 11 hearing, his newly retained counsel made a number of new arguments. Following an additional round of briefing and argument, the matter is now ripe for disposition.

**II.**

The standard for the issuance of a preliminary injunction is too well-settled to require

---

[2] Plaintiff has also presented evidence that defendant intends to act as the "presenting sponsor" at the upcoming New Jersey General Counsel of the Year Award event to be held on Friday, May 18, 2018. According to plaintiff, defendant's role in that event will allow him to present his competing services to other possible clients.

extended discussion. A party seeking a preliminary injunction must demonstrate "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

With respect to likelihood of success on the merits, the Fourth Circuit has made clear that although the movant need not show a certainty of success, the movant must make a "clear showing" of likelihood of success on the merits. *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). Analysis of each of these factors discloses that plaintiff has made the required showing for a preliminary injunction.

## A.

To begin with, plaintiff has made the requisite clear showing of likely success on the merits. The central issue with respect to likelihood of success on the merits is whether the non-solicitation and non-compete clauses of the Agreement are enforceable or unenforceable under Virginia Law.[3] In Virginia, non-compete clauses are disfavored restraints on trade. *See Simmons v. Miller*, 544 S.E.2d 666, 678 (Va. 2001). Given this disfavored status, non-compete clauses "have been upheld only when employees are prohibited from competing directly with the former employer or through employment with a direct competitor." *Omniplex World Servs. Corp. v. U.S. Investigations Servs. Inc.*, 618 S.E.2d 340, 342 (Va .2005).

Consistent with these principles, the Supreme Court of Virginia has established a three-part test for determining the enforceability of non-solicitation and non-compete clauses. This

---

[3] Despite the fact that plaintiff and defendant are both out-of-state residents and the events leading to this dispute occurred outside Virginia, Virginia law nevertheless governs pursuant to § 19 of the parties' Agreement. The Agreement also designates Virginia's state and federal courts as the exclusive fora for deciding any disputes under the Agreement. *Id.*

4

test "requires that the employer show that the clause (i) is narrowly drawn to protect the employer's legitimate business interest; (ii) is not unduly burdensome on the employee's ability to earn a living; and (iii) is not against sound public policy." *Lanmark Technology, Inc. v. Canales*, 454 F. Supp. 2d 524, 528 (E.D. Va. 2006) (citing *Richardson v. Paxton Co.*, 127 S.E.2d 113, 117 (Va. 1962)).[4] Analysis of these factors requires courts to consider "the restriction in terms of function, geographic scope, and duration." *Simmons*, 544 S.E.2d at 678.

Importantly, courts employing this three-part test must take the non-compete as written; courts have no authority under Virginia law to "'blue pencil' or otherwise rewrite the contract" to eliminate illegal overbreadth. *Pais v. Automation Products*, 36 Va. Cir. 230, 239 (1995). Thus, where a non-compete clause is ambiguous, susceptible to two or more differing interpretations, one of which is overbroad and unenforceable, the entire clause fails even though it may be reasonable as applied to the specific circumstances. *Id.* at 57-58. Still, the Supreme Court of Virginia has made clear that "restraints on competition are neither enforceable nor unenforceable in a factual vacuum" and as such "[a]n employer may prove a seemingly overbroad restraint to be reasonable under the particular circumstances of the case." *Assurance Data, Inc. v. Malyevac*, 747 S.E.2d 804, 808 (Va. 2013). Accordingly, in interpreting a non-compete clause, courts are required to take into account the factual context surrounding the agreement.

The first step in the analysis is to assess whether the clause is narrowly drawn to protect plaintiff's legitimate business interest. *See Richardson*, 127 S.E.2d at 117. Plaintiff has a legitimate business interest in imposing a reasonable non-compete clause "to protect itself from

---

[4] *See also Assurance Data, Inc. v. Malyevac*, 286 Va. 137, 144 (2013) (holding that enforceability of a non-compete agreement depends on "whether a restraint is [1] narrowly tailored drawn to protect the employer's legitimate business interest, [2] is not unduly burdensome on the employee's ability to earn a living, and [3] is not against public policy.") (citations omitted).

5

losing potential work to competitors through employees who leave the company and then compete against [plaintiff] using the business sensitive knowledge and contacts they acquired" as an employee. *See Power Distrib. v. Emergency Power Engineering, Inc.*, 569 F.Supp. 54, 57 (E.D. Va. 1983) (finding that employer had a legitimate business interest in protecting itself from competition by former employees who had gained sensitive information).[5] The Agreement's non-solicitation clause serves the same purpose, namely, preventing a former employee from using contacts acquired as an employee to compete with a former employer.

The legitimacy of the business interest does not end the analysis, because the non-solicitation and non-compete clauses must also be "reasonable in the sense that it is no greater than is necessary to protect" an employer's legitimate business interest. *Richardson*, 127 S.E.2d at 117. In determining whether the clauses are reasonable, courts must consider "the restriction in terms of function, geographic scope, and duration." *Simmons*, 544 S.E.2d at 678. The non-solicitation and non-compete clauses at issue here pass this test. There is no dispute that the one-year duration of the non-solicitation and non-compete clauses[6] is reasonable. Indeed, the Supreme Court of Virginia has deemed reasonable even longer non-compete agreements. *See Blue Ridge Anesthesia*, 389 S.E.2d at 470 (upholding a three year non-compete).[7] In this context, a one-year duration for the non-solicitation and non-compete agreement is reasonable because plaintiff invests significant resources in its legal services clients and built relationships

---

[5] *See also Worrie v. Boze*, 62 S.E.2d 876, 882 (Va. 1951) ("Freedom to contract must not be unreasonably abridged, but neither must the right to protect by reasonable restrictions that which a man by industry, skill, and good judgment has built up, be denied."); *Blue Ridge Anesthesia & Critical Care, Inc. v. Gidick*, 389 S.E.2d 467, 469 (Va. 1990) (holding that a company has a legitimate business interest in barring employee-competitor's use of customer contacts); *Roanoake Eng'g Sales Co. v. Rosenbaum*, 290 S.E.2d 882, 885 (Va. 1982) (holding that a company has a legitimate business interest in preventing the use of "lists of customers, lists of suppliers, detailed knowledge of overhead factors, pricing policies, and bidding techniques" by employee-competitor).

[6] *See* Agreement at ¶¶ 12(a), 13.

[7] *See also Roanoke Eng'g*, 290 S.E.2d at 885 (three years); *Hair Club for Men, LLC v. Ehson*, 2016 WL 4577019, at *5-6 (E.D. Va. Aug. 31 2016) (two years).

6

with many of them through defendant's work on behalf of plaintiff. Pish Decl. at ¶¶ 7-8, 16. Therefore, the one-year limitation allows plaintiff a reasonable time to convince customers to remain with plaintiff without interference from defendant.

The geographic scope of the non-solicitation and non-compete clauses is also reasonable. The Agreement bars solicitation of customers "located within fifty (50) miles of any office, branch office, or production facility" of plaintiff, and similarly bars competition "within fifty (50) miles of any office, branch office, or production facility[.]" Agreement at ¶¶ 12(a), 13. The Supreme Court of Virginia has upheld similar "fifty-mile from office" clauses as reasonable. *See Advanced Marine Enterprises, Inc. v. PRC Inc.*, 501 S.E.2d 148, 155 (Va. 1998) (upholding a restriction limited to a fifty-mile radius around former employer's 300 offices).[8] Indeed, where, as here, the employee has company-wide knowledge about customers and sales practices, the Supreme Court of Virginia has upheld even less definite geographic restrictions. In *Roanoke Eng'g*, the Supreme Court of Virginia held that a non-compete geographic clause that referred to all "territory covered by" the former employee was reasonable because the employee had company-wide knowledge that would allow him to compete with his former employer nationally. *See Roanoke Eng'g*, 290 S.E.2d at 884-85.[9] Here, defendant was employed as Chief Customer Officer, and in that role provided personal customer service to New York and New Jersey customers, and was informed about customer information spanning the entire reach of plaintiff's business locations. Pish Decl. ¶¶ 12, 14-15, 17.[10] Additionally, defendant admits that at his

---

[8] *See also New River Media Group, Inc. v. Knighton*, 429 S.E.2d 25, 26 (Va. 1993) (holding that a "60-mile, 12-month limit is not unduly harsh and oppressive in diminishing [the employee's] legitimate efforts to earn a living.").

[9] *See also Blue Ridge Anesthesia*, 389 S.E.2d at 884-85 (upholding a similar covenant limited to territories serviced by former employee).

[10] Defendant argues that plaintiff abandoned the markets in which defendant is now working, and that the geographic scope of the non-compete is therefore not narrowly tailored. The record evidence, at this stage, demonstrates that plaintiff has not abandoned the New Jersey and Philadelphia markets. Declarations from plaintiff

7

recently established competing company, Samilow Harvest Group, he "has a national practice[.]" Compl. Ex. B. Accordingly, the Agreement's non-solicitation and non-compete clauses' geographic scope is reasonable because it covers only the territories in which plaintiff conducts business and in which defendant conducted business.[11]

Finally, the functional scope of the non-solicitation and non-compete clauses is reasonable in light of defendant's former role at plaintiff. The non-solicitation clause provides that defendant

> will not . . . solicit any of [plaintiff's] customers or customer prospects within fifty (50) miles of any office, branch office, or production facility of [plaintiff] or with whom I had any contact during the term of my employment for the purpose of diverting or taking away business from [plaintiff]

Agreement at § 12(a). The Agreement's non-solicitation clause is limited to the two categories of solicitation which plaintiff might reasonably expect from defendant, namely solicitation of clients in geographic areas that would compete with plaintiff and solicitation of former clients with whom defendant worked. Furthermore, the non-solicitation clause is limited because it only bars defendant's solicitation "for the purpose of diverting or taking away business from [plaintiff]." *Id.* Thus, defendant's mere contact with former clients or possible customers of plaintiff's does not violate the non-solicitation clause. The Supreme Court of Virginia has

---

suggest that plaintiff continues to do a significant amount of business in New Jersey and Philadelphia, amounting to millions in revenue. *See* Supp. Pish Decl. at ¶¶ 8-10, 12-13, 15; Supp. Williams Decl. at ¶¶ 3-9; Grant Decl. at ¶ 9. Defendant points out that plaintiff closed its office space in Newark, New Jersey, but as plaintiff explains this did not mean that plaintiff stopped working with customers in New Jersey. Supp. Pish Decl. at ¶¶ 10, 12. Defendant also argues that plaintiff does not provide office space for clients in New Jersey, a service defendant provides, but plaintiff still provides this service in its New York office to its New Jersey customers. Thus, the evidence demonstrates that plaintiff still does substantial business in New Jersey and Philadelphia, and the geographic scope of the non-compete does not appear to be unreasonable.

[11] The non-solicitation clause also covers customers with whom defendant worked directly. *See* Agreement at ¶ 12(a) ("I will not solicit . . . or encourage others to solicit any of [plaintiff's] customers . . . with whom I had any contact during the term of my employment . . ."). As explained *supra*, the Supreme Court of Virginia has routinely upheld non-competition and non-solicitation provisions that cover past clients with whom the employee had direct contact. *See supra* n. 9. *See also Preferred Systems Solutions, Inc. v. GP Consulting, LLC*, 284 Va. 382, 394 (Va. 2012) ("The lack of a specific geographic limitation is not fatal to the covenant because the noncompete clause is so narrowly drawn to this particular project and the handful of companies in direct competition . . .")

8

upheld similar non-solicitation clauses as reasonable because the scope of the clause is limited only to solicitation that takes business away from the former employer. *See Advanced Marine Enterprises, Inc.*, 501 S.E.2d at 155 (upholding as valid a non-solicitation clause that barred solicitation of customers with whom employee worked and customers within a fifty-mile radius of former employer). Accordingly, the non-solicitation clause is narrowly limited in scope to protect plaintiff's legitimate business interests, and is not unduly burdensome on the defendant's ability to earn a living.

Similarly, the Agreement's non-compete clause has a functional scope entirely reasonable under the circumstances. This clause states in pertinent part "[defendant] will not . . . compete with [plaintiff] by providing to another person or entity in competition with [plaintiff] . . . the same or similar services as those that I provided to [plaintiff] during the term of my employment." Agreement at § 13. The non-compete clause goes on to define a person or entity in competition as a person or entity that "provides legal staffing, managed review, legal consulting, information governance, electronic data discovery and litigation support services" within fifty miles of plaintiff's offices. *Id.* Finally, the scope of the non-compete clause is further limited "to the types of activities and services included within [defendant's] Job Description described in [his] offer letter." *Id.* Thus, the non-compete clause does not prevent defendant from providing services to competitor companies provided those services fall outside the scope of defendant's former role at plaintiff.

Seeking to avoid this conclusion, defendant argues that the Agreement's non-solicitation and non-compete clauses are not narrowly tailored because the Agreement fails to define a number of terms in both clauses. Specifically, with respect to the non-solicitation clause defendant argues that the failure to define (i) "solicit," (ii) "customers," (iii) "office, branch office, or production facility," and (iv) "located" makes the clause functionally and

9

geographically overbroad. With respect to the latter three terms – customers, office *et al*, and located – defendant cites no case or authority for the proposition that these terms must be defined in the Agreement for the Agreement to be enforceable or understandable. Under ordinary circumstances, Virginia law requires giving contract terms their "ordinary meaning," and doing so here suffices to make the non-solicitation clause not only easily understandable but also far from fatally ambiguous or vague. *See TravCo Ins. Co. v. Ward*, 736 S.E.2d 321, 325 (Va. 2012) ("Words that the parties used are normally given their usual, ordinary, and popular meaning.") (quoting C*ity of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 628 S.E.2d 539, 541 (Va. 2006)). Indeed, as noted *supra*, the Supreme Court of Virginia has routinely upheld non-solicitation and non-competition agreements that do not define similar words. *See, e.g.*, *Advanced Marine Enterprises, Inc.*, 501 S.E.2d at 155. Accordingly, the failure of the Agreement to define every term in the non-solicitation clause does not render the clause ambiguous, and defendant's argument therefore fails.

With respect to the term "solicit," defendant cites only one case for the proposition that failure to define the term "solicit" might render a non-solicitation clause fatally ambiguous, namely *Prudential Secs., Inc. v. Plunkett*, 8 F. Supp. 2d 514 (E.D. Va. 1998).[12] This case is ultimately neither controlling nor persuasive. The court in *Plunkett* addressed the validity of a non-solicitation clause governed by New York law, not Virginia law. *Id.* at 516. And although there is some authority in New York law for the proposition that failure to define "solicit" in a

---

[12] Defendant also cites *Summer Wealth Mgmt., LLC v. Investment Placement Group*, 2016 WL 150387 at *2-3 (E.D. Va. 2016), but that case simply noted that although the agreement at issue did not define the term solicit, the meaning was readily discernible by looking to the ordinary meaning of the word as required by Virginia law. *Id.* at *2 ("The parties have merely obligated themselves to refrain from 'solicit[ing]' . . . anyone presently employed by the other party. . . . 'The plain meaning of the word 'solicit' requires the initiation of contact.'") (quoting *Mona Elec. Group, Inc. v. Truland Serv. Corp.*, 56 Fed. Appx. 108, 110 (4th Cir. 2003)). Although the district court denied plaintiff's motion for a temporary restraining order, it did so on the ground that plaintiff had failed to present evidence showing that defendant had taken affirmative steps to solicit employees. *Id.* at *2-3. Unlike the plaintiff in *Summer Wealth Mgmt., LLC*, plaintiff here has provided substantial evidence that defendant has made efforts to solicit clients and divert customer work from plaintiff.

10

non-solicitation agreement might render the clause unenforceable, there is *no Virginia authority* supporting such a contention. Indeed, the Supreme Court of Virginia has repeatedly upheld non-solicitation agreements which do not define "solicit." *See, e.g.*, *Advanced Marine Enterprises, Inc.*, 501 S.E.2d at 155. Thus, the *Plunkett* case is inapposite, and relevant Virginia precedents make clear that the failure to define the term "solicit" in a non-solicitation clause does not render the clause vague and unenforceable.

With respect to the non-compete clause, defendant makes the same argument, namely that failure to define a number of terms in the Agreement renders the non-compete overbroad and unenforceable. This time defendant's laundry list of undefined terms grows to include eleven supposedly undefined terms.[13] As with the non-solicitation clause, these terms are not ambiguous and no ambiguity is created by the failure of the Agreement to provide a glossary or serve as a dictionary; Virginia law makes clear that where terms are undefined they are to be given their ordinary meaning. *See Ward*, 736 S.E.2d at 325. To hold otherwise would require every contract to include a contract-specific glossary or dictionary. Rather, Virginia law requires that terms be given their ordinary meaning which in this case eliminates any ambiguity or lack of clarity.

Defendant also argues that both the non-solicitation and non-compete clauses are fatally ambiguous due to misplaced modifiers. Specifically, the non-solicitation clause provides that defendant

> will not . . . solicit any of [plaintiff's] customers or customer prospects **[Clause 1]** within fifty (50) miles of any office, branch office, or production facility of [plaintiff] or **[Clause 2]** with whom I had any contact during the term of my

---

[13] According to defendant, the following terms in the Agreement are undefined: (i) compete, (ii) providing, (iii) similar services, (iv) similar, (v) services, (vi) provides, (vii) legal consulting, (viii) information governance, (ix) services within, (x) office, branch office, production facility, and (xi) types of activities or services. Defendant's double-counting of terms such as "providing" and "provides," however, makes the list appear more dramatic than it is on closer inspection. In any event, defendant's attempt to invent ambiguity where none exists fails.

11

> employment **[modifier] for the purpose of diverting or taking away business from [plaintiff]**

Agreement at § 12(a) (emphasis added). According to defendant, it is unclear whether the modifier "for the purpose of diverting or taking away business from [plaintiff]" modifies only clause [2], contact during defendant's employment, or modifies both clause [1] – solicitation of customer and customer prospects within fifty-miles of plaintiff's offices – *and* clause [2] – plaintiff's solicitation of customers with whom defendant had contact while employed by plaintiff. According to defendant, this ambiguity is fatal to the Agreement because if the modifier applies only to clause [2], then clause [1] is overbroad because it would bar any solicitation of business by defendant, including solicitation of non-competing business. This argument is entirely unpersuasive.

Although the placement of the modifier at the end of the solicitation clause may be inartful, it is not ambiguous because defendant's interpretation of the clause is not reasonable. If defendant's interpretation is accepted, clause [2] bars defendant's solicitation of customers defendant had already solicited during his employment for the purpose of taking away business from his employer. Thus, under defendant's interpretation, clause [2] is exceedingly narrow, barring only defendant's efforts to re-solicit clients he already solicited during his employment. It is also unclear why the non-solicitation clause would even bother to cover this scenario, since defendant presumably would not be contacting clients for the purpose of diverting or taking business from plaintiff while defendant was employed by plaintiff. Defendant's reading makes little sense, as it would cover a scenario unlikely to arise, and Virginia law requires that "an unreasonable construction is always to be avoided." *Hairston v. Hill*, 87 S.E. 573, 575 (1916).[14]

---

[14] *See also Gov't Employees Ins. Co. v. Moore*, 580 S.E.2d 823, 829 (Va. 2003) ("the construction adopted should be reasonable, and absurd results are to be avoided."); *Allemong v. Augusta Nat. Bank*, 48 S.E. 897, 899 (Va. 1904) ("The words of a contract will be given a reasonable construction, where it is possible, rather than an unreasonable

Moreover, a reading that applies the modifier to both clauses is the only reasonable interpretation given the context of the Agreement and defendant's employment. *See Assurance Data, Inc. v. Malyevax*, 747 S.E.2d 804, 808 (Va. 2013) (noting that context is essential to the interpretation of non-compete clauses because "restraints on competition are neither enforceable nor unenforceable in a factual vacuum."). Defendant worked as the Chief Customer Officer at plaintiff. In this role, defendant personally provided services to a number of customers in New Jersey and New York. Defendant also supervised plaintiff's sales nationally, and as such he had access to information relating to plaintiff's customers throughout the country. Given the information defendant had access to, and the possible clients he might attempt to solicit, the interpretation of the non-solicitation clause that covers both groups of customers is the most reasonable. Clause [1] protects plaintiff from defendant's solicitation of customers with whom defendant did not work, and clause [2] protects plaintiff from defendant's solicitation of customers outside the fifty-mile geographic scope, but who defendant had worked with personally. In sum, the Agreement's non-solicitation clause, contrary to defendant's argument, is not reasonably susceptible to two readings,[15] and thus defendant's argument that the clause is fatally ambiguous fails.[16]

---

one"); *Baistar Mechanical Inc. v. Billy Casper Golf*, LLC, 2015 WL 10990120 (Va. Oct. 22, 2015) (unpublished) ([w]here there is ambiguity, [courts] will not apply such an unreasonable construction.").

[15] Defendant cites *Power Distribution, Inc. v. Emergency Power Engineering, Inc.*, 569 F. Supp. 54 (E.D. Va. 1983), for the proposition that any ambiguity in a non-compete or non-solicitation provision compels the conclusion that the provision is fatally overbroad. This decision is neither binding nor is it persuasive given defendant's reading of it. Defendant over-reads the case. Unlike the case here, the provision in *Power Distribution* was, in fact, susceptible to multiple reasonable interpretations one of which would have barred the employee from performing duties for a competitor that were unrelated to the employee's past work. *Id. at* 58. By contrast, this provision is unambiguous and not reasonably susceptible to multiple interpretations, so there is no risk of barring the employee from performing non-competing tasks with competitor companies.

[16] Even if the Agreement's non-solicitation clause was, as defendant argues, ambiguous on its face, Virginia law bars facial attacks on the validity of non-compete agreements, instead requiring courts to look at the facts of the particular case. *Assurance Data, Inc.*, 747 S.E.2d at 808. Indeed, the Supreme Court of Virginia has stated that "[a]n employer may prove a seemingly overbroad restraint to be reasonable under the particular circumstances of the case." *Id.* at 808 (citing *Simmons*, 544 S.E.2d at 678)). Given the circumstances of this case, the non-solicitation

With respect to the non-compete clause, defendant argues that its language is also fatally ambiguous. The non-compete clause includes language limiting its scope "to the types of activities and services included within [defendant's] Job Description described in [defendant's] offer letter." Agreement at ¶ 13 (emphasis added). Defendant argues this phrase is susceptible to multiple meanings, but that is incorrect; the clause clearly sets the scope of competitive activities to include only the activities and services described in plaintiff's offer letter. To be sure, the offer letter does include a number of items that are not part of the "Job Description," including compensation terms. And, the offer letter does not have a section specifically entitled "Job Description." But neither of those facts renders the Agreement's non-compete clause ambiguous. Indeed the offer letter and the attached job description make clear that defendant is simply barred from performing for a competitor the same job duties he performed for plaintiff.[17] Defendant points to only one clause that he believes to be vague: "creating interest, developing opportunities, managing client relationships . . . and driving revenue by closing business with decision makers at corporations and law firms." *See* Offer Letter. This language is not vague. Defendant was expected to work in sales and client management with respect to the law firms and companies for which plaintiff provided legal staffing and eDiscovery services. Nothing about defendant's job description is unclear, and the non-compete clause simply bars defendant from engaging in the same work he engaged in at plaintiff.

Defendant next argues that the entire Agreement is invalid because of blue pencil clauses contained in § 13a of the Agreement. The clause provides that:

> Paragraph 13 shall be severable, and if any of them is held invalid because of its duration, scope of area or activity, or any other reason, the parties agree that such

---

provision at issue is not functionally overbroad in its application to defendant.

[17] Defendant argues that items such as being "a team player" are also included in the job description and would be barred, but that example is not persuasive because being a team player is an employer expectation, clearly not a "service or activity" as defined in the non-compete clause.

>clause shall be adjusted or modified by the court to the extent necessary to cure
>that invalidity, and the modified clause shall be enforceable as if originally made
>in this agreement.

Agreement at § 13a. Although the Supreme Court of Virginia has not weighed in on the issue, multiple Virginia circuit courts have held that blue pencil clauses are invalid under Virginia law. Defendant attempts to take this argument a step further, citing language in *BB&T Insurance Servs., Inc. v. Rutherford*, 80 Va. Cir. 174 (2010) and *Pace v. Retirement Plan Administrative Serv., Inc.*, 74 Va. Cir. 201 (2007) for the proposition that the addition of a blue pencil clause in a contract with a non-compete renders the entire contract invalid. This argument is ultimately unpersuasive. To begin with, it is not clear that the Virginia circuit court cases defendant cites stand for the proposition that the insertion of a blue pencil clause invalidates the entire agreement. In each case, the circuit courts first found that the non-compete itself was invalid, and then discussed the impact of the blue pencil clause. *See Rutherford*, 80 Va. Cir. at 5 ("[blue pencil] clauses have been deemed invalid and render the agreement unenforceable"); *Pace*, 74 Va. Cir. at 4 ("[blue pencil] clauses have been deemed invalid and render the agreement unenforceable"). It appears that the courts may have simply been stating that the non-compete agreements were invalid because the blue pencil clauses could not be used to salvage them.

Even if that were not the case, these statements amount merely to dicta. Indeed, the cases cited by those courts stand only for the proposition that blue pencil clauses are invalid under Virginia law. *Better Living Components, Inc. v. Willard Coleman & Blue Ridge Truss & Supply*, 67 Va. Cir. 221, 226 (Albemarle County Cir. Ct. 2005) ("Although the Supreme Court of Virginia has not expressly ruled on the existence of a "blue pencil" power, it is clear that that Court does not consider the possibility of reforming unreasonable restraints on trade in any way."); *Cliff Simmons Roofing, Inc. v. Cash*, 49 Va. Cir. 156, 158 (Rockingham County Cir. Ct. 1999) ("[T]his court has not been granted the authority to 'blue pencil' or otherwise rewrite the

contract, the covenants therefore fail.").

Finally, a rule of law that would strike an entire non-compete agreement because of the inclusion of an invalid blue pencil clause does not comport with common sense or sound public policy. Where, as here, there is no need to blue pencil the non-compete or non-solicitation clauses, it makes little sense to frustrate the parties' intentions to be bound by those clauses because a separate, inert blue pencil clause exists in the contract. Accordingly, defendant's argument that the blue pencil clause in § 13a of the Agreement invalidates the non-compete and non-solicitation clauses fails.

Lastly, defendant argues he was "forced" to sign the Agreement because defendant's increased salary was contingent on his accepting the non-compete and non-solicitation clauses. Samilow Decl. at ¶ 15. But the fact that a salary increase was contingent on acceptance of non-compete and non-solicitation clauses does not, on this record, support a claim of duress. *See Goode v. Burke Town Plaza, Inc.*, 436 S.E.2d 450, 452-53 (Va. 1993) ("the application of economic pressure by threatening to enforce a legal right is not a wrongful act [and] cannot constitute duress.") (citing *Bond v. Crawford*, 69 S.E.2d 470, 475 (Va. 1952)). Rather, the increased compensation constituted consideration for the agreement not to compete, and Virginia courts have routinely upheld such arrangements. *See, e.g.*, *Paramount Terminate Control Co. v. Rector*, 380 S.E.2d 922, 926 (Va. 1989).

In sum, a review of the non-compete and non-solicitation clauses suggests that they are narrowly tailored to protect plaintiff's legitimate business interests, that the clauses are not unduly burdensome to defendant's ability to earn a living, and that the clauses do not violate public policy. Given the record in this case, it also appears that defendant is violating the non-solicitation clause by soliciting plaintiff's clients, Lowenstein Sandler, Porzio, and Teligent, and is violating the non-compete by diverting Porzio's and Teligent's business from plaintiff.

16

Accordingly, at this stage plaintiff has made a clear showing of success on the merits.

**B.**

With respect to irreparable harm, plaintiff contends that the loss of future business from customers diverted by defendant constitutes irreparable harm. Generally, irreparable harm "is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2d Cir. 1973)). Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quotation and citation omitted).

In this case, the harm plaintiff faces is neither remote nor speculative. Plaintiff has presented evidence that defendant has already diverted customers from plaintiff and appears intent on continuing to do so through his Samilow Harvest Group business. Specifically, defendant has solicited and diverted business from plaintiff's clients that defendant serviced during his employment including Lowenstein, Porzio, and Teligent. *See* Pish Decl. ¶¶ 24-29, 30-31, 33-35. The harm plaintiff is suffering is therefore actual, particularly with respect to its project with Teligent which was diverted by defendant. Thus, plaintiff is suffering present harm from defendant's breach of the non-solicitation and non-compete.

Defendant argues that this kind of harm – the loss of customers – is not irreparable because money damages are reasonably easy to measure. According to defendant, damages can be measured by calculating the money earned from the diverted clients and deals, and simply awarding that amount as damages. Although it may be easy to calculate the amount of harm caused with respect to a single transaction between defendant and a client, the Fourth Circuit has repeatedly recognized that "[t]he threat of a permanent loss of customers and the potential loss of goodwill also support a finding of irreparable harm." M*ulti-Channel TV Cable Co.*, 22 F.3d at

552.[18] In this case, plaintiff is harmed not only by the loss of particular deals or particular work from clients, but plaintiff also risks losing future business opportunities with the clients defendant has diverted. Thus, plaintiff has sufficiently shown a risk of irreparable harm.

In the alternative, defendant argues that there is no harm to plaintiff because plaintiff abandoned the New Jersey and Philadelphia markets in which defendant is working and soliciting clients. Simply put, that does not appear to be true on this record. *See* Supp. Pish Decl at ¶¶ 8, 18, 19; Supp. Williams Decl. ¶¶ 4, 5, 12. Thus, defendant's argument that plaintiff is suffering no harm because plaintiff abandoned the market is without merit, and plaintiff has shown a risk of irreparable harm.

## C.

Finally, the balance of hardships and the public interest both weigh in favor of issuing an injunction on this record. Although it is undoubtedly true that subjecting defendant to the restrictive covenant may impair his ability to earn a living, plaintiff has an interest in protecting its customers from diversion pending resolution of the case. *See Power Distrib.*, 569 F.Supp. at 57 (finding that an employer has a legitimate business interest in protecting itself from competition by former employees who possess sensitive information). And the public has an interest in protecting the legitimate expectations of parties to a contract, including non-compete agreements. To be sure, contracts in restraint of trade are generally disfavored under Virginia law as a matter of public policy. *See Simmons*, 544 S.E.2d at 678. But, Virginia law does encourage the enforcement of *valid* non-compete agreements, such as the one at issue here.[19]

---

[18] *See also Merrill Lynch, Pierce, Fennder & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985) (finding preliminary injunction appropriate where plaintiff "faced irreparable, noncompensable harm in the loss of its customers.").

[19] Defendant urges a different conclusion on the ground that legal services contracts are different. In essence, defendant seeks a rule of law stating that non-compete and non-solicitation agreements are always invalid if the

18

Accordingly, the final two *Winters* factors point persuasively to the conclusion that a preliminary injunction must issue.

### III.

In sum, plaintiff in this case has made a clear showing that it is likely to succeed on the merits of its claim, and that the balance of hardships and public interest favor the issuance of an injunction. For these reasons, the motion for a preliminary injunction must be granted. To be clear, however, this injunction is only preliminary, it is not a final judgment on the merits of the case. The case will now proceed to discovery, and if warranted, trial. If during the course of discovery the parties discover additional facts demonstrating that the preliminary injunction is not necessary or must be altered, they are urged to file an appropriate motion.

An appropriate Order shall issue.

T. S. Ellis, III
United States District Judge

---

agreements relate to legal services. Defendant cites no case for this proposition and there is no compelling reason to believe that contracts not to compete should be uniformly unenforceable where legal services are provided. In fact, as this case demonstrates, many of the same concerns about misuse of customer information and relationships apply in the legal services business, just as they apply across the business landscape.